IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

JESSE MICKLES,

                Petitioner,

v.                                            Case No. 5:22-cv-00242

WARDEN HECKARD,

                Respondent.


**PROPOSED FINDINGS AND RECOMMENDATIONS**

Currently pending before the Court are Petitioner's Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, (ECF No. 1), and Respondent's Response to Order to Show Cause seeking dismissal of the petition, (ECF No. 8). This matter is assigned to the Honorable Frank W. Volk, United States District Judge, and by Standing Order has been referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). For the following reasons, the undersigned respectfully **RECOMMENDS** that the presiding District Judge **GRANT** Respondent's request for dismissal, (ECF No. 8); **DISMISS** the Petition for a Writ of Habeas Corpus, (ECF No. 1); and **REMOVE** this matter from the docket of the Court.

I.    **Relevant History**

Petitioner is a federal prisoner incarcerated in Federal Correctional Institution ("FCI") Beckley in Beaver, West Virginia. *See* Find an Inmate, Federal Bureau of Prisons, *available at* https://www.bop.gov/inmateloc (last accessed Feb. 14, 2023). His projected

release date is July 21, 2025. *Id.*

### A. Incident Report

On February 21, 2022, Petitioner was charged in incident report number 3598109 at FCI Beckley. Officer E. Woolwine ("Woolwine") reported that he was conducting "Bar Taps" at 6:00 p.m. when he observed that the window to cell 201 was covered. (ECF No. 1 at 15). Woolwine purportedly opened the door and observed Petitioner shirtless, sitting in a chair with what appeared to be a stencil on his right shoulder blade area. (*Id.*). Inmate Travis Preston ("Preston") was reportedly sitting on the bed preparing a homemade tattoo gun and ink. (*Id.*). Petitioner was charged with a violation of prohibited act 228A, attempted tattooing or self-mutilation. (*Id.*).

### B. Investigation

On February 22, 2022, Lieutenant J. Bailey ("Bailey") investigated the incident. Bailey delivered a copy of the Incident Report to Petitioner and purportedly advised him of his right to remain silent. (ECF No. 1 at 15, 17). Bailey documented that Petitioner was respectful and declined to make a statement. (*Id.* at 17). Based on the information contained in the Incident Report and photographs, Bailey forwarded the Incident Report to the Unit Disciplinary Committee ("UDC"). (*Id.*).

### C. UDC Action

On February 23, 2022, C. Dennison, Chairman of the UDC, decided to forward the Incident Report to a Disciplinary Hearing Officer ("DHO") based upon Woolwine's statement in the Incident Report and the supporting documentation. (ECF No. 1 at 16).

### D. Inmate Notices

On February 23, 2022, Petitioner signed a Notice of Disciplinary Hearing form. The form listed that Petitioner was charged with tattooing or self-mutilation in violation

of Code Number 228A. (ECF No. 8-2 at 13). Petitioner checked a box indicating that he wished to call one witness who would testify that he "wasn't getting [a] tattoo," and it was marked that Petitioner did not want a staff representative at the hearing. (*Id*.). On the same date, Petitioner executed an Inmate Rights at Disciplinary Hearing form. The form listed (with certain qualifications) that Petitioner had the right to receive written notice of the charges at least 24 hours before the hearing, was entitled to staff representation, could call witnesses and present documentary evidence, had the right to remain silent, could be present during the hearing, was entitled to notification of the DHO's decision, and could appeal the DHO's decision. (ECF No. 8-2 at 11).

### E. *Disciplinary Hearing*

On March 31, 2022, Petitioner had a disciplinary hearing before E. Harvey, DHO ("the DHO"). (ECF No. 1 at 18). According to the DHO's report, Petitioner confirmed at the hearing that he received a copy of the incident report, did not need a staff representative, and did not have any documentary evidence to present. (*Id*.). The DHO further stated that he reviewed Petitioner's due process rights with him, and Petitioner confirmed that he understood them. (*Id*.). Petitioner provided a statement denying the charge, stating "I was just in the cell to get something from him," and "I did have my shirt off because I was getting ready to get in the shower [and] had just stopped at his cell on the way." (*Id*. at 18-19). Petitioner claimed that he did not know why Woolwine would "say that" because he "never even asked [Petitioner] anything about getting a tattoo." (*Id*. at 19). Preston provided a witness statement, alleging that Petitioner originally came into his cell "to buy something," and he sat down to talk while Preston gathered the items that Petitioner was buying. (*Id*. at 20). Preston denied that Petitioner had a stencil on his body, claimed that he was not going to tattoo Petitioner, and stated that he did not recall if

3

Petitioner was wearing a shirt. (*Id.*). The DHO considered photographs, which are not part of the Court's record, but Petitioner states that the photographs depicted the alleged tattoo gun and needle. (ECF Nos. 1 at 19, 10 at 2). Ultimately, the DHO gave greater weight to Woolwine's statement in the incident report, finding that there was no evidence to undermine the veracity of the officer's account, whereas Petitioner had motive to downplay his role in the incident to avoid sanctions and Preston likely had motive to help Petitioner due to loyalty or friendship. (ECF No. 1 at 20). The DHO found that Petitioner committed the prohibited act and sanctioned him to the loss of 27 days of good conduct time and the loss of commissary privileges for two months. (*Id.* at 20-21). The DHO's report provided the reasons for the sanctions and advised Petitioner of his appeal rights. (*Id.* at 21). A copy of the report was delivered to Petitioner by E. McClanahan on May 2, 2022. (*Id.*).

### F. § 2241 Petition

On May 22, 2022, Petitioner filed the instant petition under § 2241 challenging the disciplinary proceeding and loss of good conduct time. (ECF No. 1). He asserts that he was denied due process based upon the following facts:

1. There were never any photographs taken of Petitioner's alleged tattoo, (*Id.* at 9, 10);

2. Petitioner never actually received a tattoo or engaged in self-mutilation, and the alleged offense of *attempted* tattooing/self-mutilation does not exist in the inmate handbook, (*Id.* at 9, 10);

3. Petitioner requested, and in fact needed, a staff representative because of "incompetency" and "lack of understanding," but "they wouldn't grant [him] one," (*Id.* at 9, 10);

4. "They falsified" the incident and DHO reports, (*Id.* at 9);

5. The alleged tattoo gun that was recovered from the cell did not have a needle in it, (*Id.* at 9);

6.  "They" never followed any of the substantive and procedural due process procedures in violation of program statement 5270.09, (*Id.* at 9);

7.  Petitioner was denied a copy of the UDC decision held on February 23, 2022 until April 31, 2022, (*Id.* at 10);

8.  Petitioner was also denied a BP9 form to appeal the UDC decision, (*Id.* at 10);

9.  The DHO never advised Petitioner of his right to remain silent, (*Id.* at 10); and

10. The DHO report contains a "fraudulent misrepresentation of material facts," including referencing an unknown "inmate Bowens" who was not involved in the incident, (*Id.* at 10).

After the Court issued a Show Cause Order, Respondent filed a response on July 28, 2022 in which he moved to dismiss the petition. (ECF No. 8). Respondent argued that the petition should be dismissed because Petitioner did not exhaust his administrative remedies; he received all procedural safeguards guaranteed by *Wolff v. McDonnell*, 418 U.S. 539 (1984); he did not have a constitutional right to a staff representative; failure to follow BOP policy does not amount to a due process violation; an attempt to commit a prohibited act is treated the same as committing the act itself; and Petitioner was not deprived of any rights guaranteed to him under BOP policy. (*Id.* at 7-20).

In reply, Petitioner argued that exhaustion should be excused because BOP officials refused to give him the administrative remedy forms, which is something they have a long history of doing to inmates. (ECF No. 10 at 2, 5). Petitioner attached his requests for forms to appeal the UDC and DHO rulings. (*Id.* at 7). He contended that the BOP violated *Wolff* by not presenting evidence to him, and he was denied the right to present documentary evidence because staff did not video the incident (*Id.* at 3). Petitioner further asserted that he was denied a neutral and detached hearing body because the DHO relied only on the officer's statement; there was no evidence to support

the DHO's finding, including no picture or video recording of what "appeared" to be a stencil; photographs of the tattoo gun and needle should not have been considered by the DHO because Petitioner was not charged with possessing them; and Petitioner asked for a representative, but BOP staff wrote on the form that he did not request one. (*Id*. at 4-6). Petitioner asks the Court to expunge the incident report and restore his 27 days of good conduct time. (*Id*. at 6).

## II.    <u>Standard of Review</u>

Respondent requested that this Court dismiss Petitioner's § 2241 petition, but he does not discuss under what authority he brings the request. Because Respondent filed a Response concurrently with his motion to dismiss, the motion technically should be considered as one for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). *See Walker v. Kelly*, 589 F.3d 127, 139 (4th Cir. 2009). However, the distinction makes no practical difference as the same standard of review applies to motions to dismiss under Rule 12(b)(6) and motions for judgment on the pleadings under Rule 12(c), and both motions may be filed in habeas actions. *Id*. at 138-39; *see also Martin v. U.S. Parole Comm'n*, No. CV PWG-17-3335, 2018 WL 2135009, at *1 (D. Md. May 9, 2018).

When deciding a motion for judgment on the pleadings, the court must accept all well-pleaded allegations of the petition as true and "draw all reasonable factual inferences" in favor of the petitioner. *See Massey v. Ojaniit*, 759 F.3d 343, 353 (4th Cir. 2014); *Wolfe v. Johnson*, 565 F.3d 140, 169 (4th Cir. 2009). Nonetheless, the court is "not obliged to accept allegations that 'represent unwarranted inferences, unreasonable conclusions, or arguments,' or that 'contradict matters properly subject to judicial notice or by exhibit.'" *Massey*, 759 F.3d at 353 (quoting *Blankenship v. Manchin*, 471 F.3d 523, 529 (4th Cir. 2006)). A court presented with a motion for judgment on the pleadings in a

6

federal habeas case must consider "the face of the petition and any attached exhibits." *Walker*, 589 F.3d at 139 (quoting *Wolfe*, 565 F.3d at 169) (internal markings omitted). In addition, the court may consider "matters of public record," including documents from prior or pending court proceedings, when resolving the motion, without converting it into a motion for summary judgment. *Id.* The Court "may also consider documents attached to the complaint ... as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

## III.    Discussion

Respondent argues that Petitioner's claims should be dismissed because he failed to exhaust his administrative remedies concerning his disciplinary conviction, and he fails to state a claim for relief under § 2241.

### A. *Exhaustion of Administrative Remedies*

Although § 2241 does not itself contain an exhaustion prerequisite, courts have judicially imposed a duty on prisoners to exhaust administrative remedies before bringing a claim under that statute. *See Braden v. 30th Judicial Circuit Court,* 410 U.S. 484, 490–91 (1973); *see also McClung v. Shearin,* No. 03–6952, 2004 WL 225093, at *1 (4th Cir. Feb.6, 2004) (citing *Carmona v. United States Bureau of Prisons,* 243 F.3d 629, 634 (2d Cir.2001)).

The Court may, in its discretion, waive exhaustion under certain circumstances, such as "when a petitioner demonstrates futility, the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or the administrative procedure is clearly shown to be inadequate to prevent irreparable harm." *Wright v. Warden,* Civil Action RDB–10–671, 2010 WL 1258181, *1 (D. Md. Mar. 24, 2010). However, "in the

absence of exceptional circumstances where the need for the remedy afforded by the writ of *habeas corpus* is apparent [...] courts require exhaustion of alternative remedies before a prisoner can seek federal habeas relief." *Timms v. Johns*, 627 F.3d 525, 530–31 (4th Cir. 2010) (citations and marking omitted). "While habeas corpus is "always available to safeguard the fundamental rights of persons wrongly incarcerated, it is the avenue of last resort." *Id.*

The BOP's Administrative Remedy Program, 28 C.F.R. § 542.10, *et seq.*, provides a process by which an inmate can seek review of an issue relating to any aspect of his or her confinement. With certain exceptions, an inmate must first present the issue of concern informally to a BOP staff member within the procedures prescribed by the warden of the institution in which the inmate is confined. *Id.* at § 542.13. An inmate can then file a formal written Administrative Remedy Request on the specified form. *Id.* at § 542.14. If the inmate is unsatisfied with the warden's response to the request, the inmate can appeal the decision to the appropriate regional director and can then appeal the response of the regional director to the general counsel. *Id.* at § 542.15. The administrative remedy request and appeals must comply with the requirements specified by the BOP. *Id.* at §§ 542.14, 542.15.

It is clear from the record that Petitioner did not exhaust his administrative remedies before filing this action. (ECF No. 8-1 at 7). However, whether cause and prejudice exist to excuse his failure to exhaust is a contested issue. Petitioner claims that the exhaustion requirement should be excused because the BOP refused to give him the required forms to appeal the DHO's decision. (ECF No. 10 at 2). When viewing Petitioner's allegations as true and drawing all reasonable factual inferences in his favor, the undersigned **FINDS** that it would be premature to dismiss the petition for lack of

exhaustion at this stage of the proceedings.

### B. Merits of Petition

Federal prisoners serving a term of imprisonment of more than one year, but less than life, may earn "good conduct time" for satisfactory behavior while incarcerated. 18 U.S.C. § 3624(b). The Due Process Clause of the Fourteenth Amendment to the United States Constitution protects inmates from being deprived of life, liberty, or property without due process of law. Thus, inmates have a constitutionally protected liberty interest in good conduct time because it impacts the duration of their sentences. *Wolff v. McDonnell,* 418 U.S. 539, 556 (1974); *Marino v. Masters*, No. 1:12-cv-00393, 2015 WL 66511, at *5 (S.D.W. Va. Jan. 5, 2015) (citing *Ponte v. Real,* 471 U.S. 491, 495 (1985)).

Despite these due process protections, a federal prisoner that is subject to a disciplinary proceeding in which he faces the loss of good conduct time is not afforded the "full panoply of rights" due to a defendant in a criminal prosecution. *Wolff*, 418 U.S. at 556. In *Wolff*, the Supreme Court of the United States ("Supreme Court") established that a prisoner facing the potential loss of good conduct credit is guaranteed certain minimal requirements of procedural due process, such as: (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; (3) if the prisoner is illiterate or otherwise unable to collect and present evidence, the assistance of a fellow prisoner, staff member, or competent inmate designated by the staff; (4) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action; and (5) an impartial factfinder. *Wolff,* 418 U.S., at 563–571). The DHO follows a procedure that incorporates these due process protections. *See* 28 C.F.R. § 541.8.

The Supreme Court later clarified in *Hill* that the revocation of good conduct time comports with the minimum requirements of procedural due process if the findings of the prison disciplinary board are supported by "some evidence in the record." *Superintendent, Massachusetts Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454, (1985) (internal markings and citation omitted). The standard merely requires that "there was some evidence from which the conclusion of the administrative tribunal could be deduced." *Id*. at 455. For habeas courts, ascertaining whether that standard is satisfied "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence," but rather, "the relevant question is whether there is *any evidence in the record* that could support the conclusion reached by the disciplinary board." *Id*. at 455-56 (emphasis added).

The Supreme Court explicitly declined "to adopt a more stringent evidentiary standard as a constitutional requirement, noting that "[p]rison disciplinary proceedings take place in a highly charged atmosphere, and prison administrators must often act swiftly on the basis of evidence that might be insufficient in less exigent circumstances." *Id*. at 456.  The Court explained that, "[t]he fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact" because "[r]evocation of good time credits is not comparable to a criminal conviction, and neither the amount of evidence necessary to support such a conviction, nor any other standard greater than some evidence applies in this context." *Id*. (citations and marking omitted).

The United States Court of Appeals for the Fourth Circuit ("Fourth Circuit")  also considered the "some evidence" standard, noting that it is "an exceedingly lenient standard, requiring only 'a modicum of evidence' in order 'to prevent arbitrary

deprivations without threatening institutional interests or imposing undue administrative burdens.'" *Tyler v. Hooks*, 945 F.3d 159, 170 (4th Cir. 2019) (quoting *Hill,* 472 U.S. at 455). In *Tyler,* the Fourth Circuit held that, in order to sustain a punishment imposed pursuant to a prison disciplinary hearing, the Government "need only point to 'some evidence' in the record—even if it is merely circumstantial—that [the prisoner] was guilty of the charged disciplinary offense." *Id.* at 171. The Fourth Circuit further found that the lack of any probative evidence in the record beyond conclusory statements of guilt meant the prison failed to clear even this lenient standard, but admonished that "this is the very rare case where federal habeas relief will be available due to a total absence of evidence in the record…" *Id.* at 173.

For the reasons discussed below, the undersigned **FINDS** that the BOP satisfied the *Wolff* procedural due process requirements, the DHO's decision is supported by "some evidence," and Petitioner fails to assert any other claim for relief under § 2241.

### 1.  Notice of Charge

"Due process requires that prison officials give an accused inmate written notice of the charges against him at least twenty-four hours prior to conducting a disciplinary hearing." *Allen v. Young*, No. 5:18-CV-01463, 2020 WL 2477939, at *10 (S.D.W. Va. Mar. 2, 2020), *report and recommendation adopted,* 2020 WL 2475902 (S.D.W. Va. May 13, 2020), *aff'd,* 827 F. App'x 354 (4th Cir. 2020) (citing *Wolff*, 418 U.S. at 564); *Segarra v. McDade*, 706 F.2d 1301, 1304 (4th Cir. 1983). The purpose of the 24-hour requirement is to allow the inmate to "marshal the facts and prepare a defense." *Wolff*, 418 U.S. at 564.

In this case, the first *Wolff* factor was satisfied because Petitioner was provided written notice of the disciplinary charges much more than 24 hours in advance of the

DHO hearing. In fact, Petitioner had over one month to prepare for the hearing after being notified of the alleged violation. Petitioner was given a copy of the Incident Report on February 22, 2022. (ECF No. 1 at 15, 17). The document included Woolwine's description of the incident and identified that Petitioner was accused of violating Code Number 228, attempted tattooing or self-mutilation. (*Id.* at 15). Petitioner was provided additional written notice of the charge on February 23, 2022. On that date, he signed a Notice of Disciplinary Hearing form, which identified that Petitioner was charged with tattooing or self-mutilation in violation of Code Number 228A. (ECF No. 8-2 at 13). Petitioner's disciplinary hearing did not occur until March 31, 2022. (ECF No. 1 at 18). Therefore, the undersigned **FINDS** that Petitioner was clearly provided sufficient notice under *Wolff*.

### 2. Witnesses and Evidence

The law provides that prisoners have a qualified right to call witnesses and present documentary evidence at a disciplinary hearing. *Lennear v. Wilson*, 937 F.3d 257, 268 (4th Cir. 2019). Petitioner does not allege that he was prevented from calling witnesses, and he indeed called as a witness Preston, the other inmate involved in the incident at issue. Petitioner instead argues that he was denied the right to present documentary evidence "due to staff failing to obtain the evidence against him at the time of the incident." (ECF No. 10 at 3). He specifies that the staff "could have brought a camcorder" to document that he had a stencil on his back, and Woolwine should have "got a picture" or a "camcorder shot" of the stencil pursuant to Program Statement 5270.09. (*Id.* at 3-4).

Failure to follow BOP policy or regulations does not establish a constitutional violation. *Hodge v. Rivers*, No. 7:20CV00570, 2021 WL 48638, at *3 (W.D. Va. Jan. 6, 2021) (citations omitted). BOP policies and regulations are intended to afford prisoners constitutionally required minimum due process, but the failure of prison officials to

follow their own internal policies, procedures or regulations alone is insufficient to make out a due process violation as long as the constitutionally required minimum is met. *Shell v. Warden*, No. CV 5:21-00366, 2022 WL 17219003, at *3 (S.D.W. Va. Aug. 24, 2022), *report and recommendation adopted sub nom. Shell v. Warden of Fed. Corr. Inst., Beckley,* 2022 WL 17216263 (S.D.W. Va. Nov. 23, 2022) (citation omitted). Indeed, "prison regulations are not designed to confer rights on or benefits to inmates," but rather, they are "primarily designed to guide correctional officials in the administration of prisons." *Id.*

Petitioner does not point to any specific provision of Program Statement 5270.09 that required Woolwine to go fetch a camcorder and record the stencil on Petitioner's body, or take a photograph of the stencil. But even if Woolwine violated BOP policy by not taking a video recording or picture of the stencil or failed to obtain any other specific evidence, that fact alone does not establish a violation of Petitioner's due process rights. The only issue in this case is whether Petitioner was afforded due process under the Constitution. A prisoner that is at risk of losing good time credits has "a qualified right to obtain *and* compel consideration of video surveillance evidence, particularly evidence that is potentially exculpatory or otherwise likely to assist an inmate in mounting a defense, provided it would not be unduly hazardous to institutional safety or correctional goals." *Whatley v. Streeval*, No. 7:20-CV-00383, 2021 WL 4395807, at *4 (W.D. Va. Sept. 27, 2021) (markings and citations omitted). Yet, "if the district court determines that Petitioner did not timely request such evidence, or if the evidence did not exist, then no violation of Petitioner's procedural due process rights occurred." *Lennear*, 937 F.3d at 279. The BOP simply cannot produce—or for that matter, wrongfully withhold—evidence that does not exist.

Petitioner does not assert that any evidence was withheld from him or that the DHO neglected to consider any particular evidence. In fact, his entire argument is premised on the fact that additional evidence did not exist. Accordingly, while Petitioner's claim is properly understood as a challenge to the sufficiency of the evidence, which is discussed in detail in a subsequent section of this PF&R, the undersigned **FINDS** that Petitioner does not assert a cognizable procedural due process claim on the ground that Petitioner was denied the ability to call witnesses or present evidence in his defense.

### 3.  Staff Representative

Prisoners are not entitled to either retained or appointed counsel in disciplinary proceedings. *Wolff*, 418 U.S. at 570. The BOP has adopted regulations which provide that prisoners are entitled to the assistance of a staff representative during the DHO hearing process, if they request one. 28 C.F.R. § 541.8(d). However, the issue in this case is not whether the BOP violated its policy. The Supreme Court has made clear that a prisoner is only entitled to a staff representative in the prison discipline system if the prisoner is illiterate or when the "complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case." *Wolff*, 418 U.S. at 570; *see Ul-Hassan v. Rickard*, No. CV 1:16-10996, 2020 WL 1272087, at *2 (S.D.W. Va. Mar. 16, 2020) (collecting cases). Petitioner claims that he requested a staff representative for the disciplinary hearing due to his "incompetency" and "lack of understanding," but "they wouldn't grant [him] one." (ECF No. 1 at 9, 10). He asserts that BOP staff erroneously documented that he did not request a representative. (ECF No. 10 at 5).

The record reflects that Petitioner declined to have a staff representative with him at the disciplinary hearing. (ECF No. 8-2 at 13). Assuming for the sake of argument that

the form in the record, which was signed by Petitioner and indicated ***no desire*** for a representative, is wrong; *and* that Petitioner instead requested a representative; *and* that his request was denied, Petitioner still fails to assert a meritorious claim, because he does not allege any facts indicating that he is illiterate, or that the disciplinary case was unusually complex such that he was potentially entitled to assistance. In fact, the record supports the opposite conclusion. This was a straightforward disciplinary case regarding a single violation witnessed by a reporting officer and one other inmate. Petitioner provided a statement regarding the incident and offered the other inmate as a witness in his defense at the disciplinary hearing. Furthermore, Petitioner has submitted numerous well-articulated pleadings and briefs in this civil action. Petitioner is very clearly literate and able to collect and present the necessary evidence for adequate comprehension of the case. The undersigned **FINDS** that Petitioner fails to state a claim that the absence of a staff representative violated his constitutional guarantee of due process.

### 4. Written Decision

Government officials must provide the prisoner a written report after the disciplinary hearing detailing "the evidence relied on and reasons for the disciplinary action." *Wolff*, 418 U.S. at 564. In this case, Petitioner attached to his petition the DHO's report, which lists the evidence that the DHO considered, including (1) the statements from Woolwine, Petitioner, and Preston and (2) photographs. (ECF No. 1 at 18-20). The DHO explained how he weighed the evidence, the decision he reached, and his reasons for the disciplinary actions imposed. (*Id.* at 20-21).

Petitioner argues that the DHO's report contained a "fraudulent misrepresentation of material facts" because the DHO referenced an unknown "inmate Bowens" who was not involved in the incident. (ECF No. 1 at 10). The DHO admitted that it was a single

typographical error that should have read "inmate Mickles." (ECF No. 8-2 at 4). This negligible flaw did not impact the overall purpose of the report, which was to document the DHO's reasoning and conclusion. Those elements of due process were undoubtedly accomplished. It is readily apparent from the report that the DHO was referring to Petitioner, not an unknown inmate Bowens. In fact, both the preceding and subsequent sentences provide necessary clarification, repeatedly referring to Petitioner as the inmate at issue and his witness as Preston. (ECF No. 1 at 20). Petitioner's assertion that the DHO's report contained a "fraudulent misrepresentation of material facts" is unavailing.

Petitioner does not articulate any viable argument that the DHO's report failed to satisfy procedural due process requirements. Further, he does not dispute that a copy of the DHO's written report was delivered to him by E. McClanahan on May 2, 2022. (*Id.* at 21). For those reasons, the undersigned **FINDS** that this *Wolff* factor was satisfied.

### 5. Impartial Decisionmaker

A prisoner facing disciplinary charges has the right to an impartial decisionmaker. *Wolff*, 418 U.S. at 571. However, prison hearing officers are not held to the same standard of neutrality as judges in criminal proceedings. *Allen v. Young*, No. 5:18-CV-01463, 2020 WL 2477939, at *14 (S.D.W. Va. Mar. 2, 2020), *report and recommendation adopted,* 2020 WL 2475902 (S.D.W. Va. May 13, 2020), *aff'd,* 827 F. App'x 354 (4th Cir. 2020) (citations omitted). In order for this court to find that the DHO was biased against Petitioner "there must be some substantial countervailing reason to conclude that he was actually biased with respect to factual issues being adjudicated." *Id.* The presumption of impartiality is especially strong where the inmate alleges a hearing officer was biased, but he fails to point to any specific irregularities in a hearing which comported with due process. *Id.*

Petitioner alleges in his reply memorandum that he was denied a neutral and detached hearing body because the DHO relied only on Woolwine's statement. (ECF No. 10 at 4). However, the mere fact that Petitioner disagrees with the DHO's evaluation of the evidence does not allege a due process violation. Petitioner provides no facts or evidence to support a vague accusation that the DHO was biased in favor of the reporting employee, or that he exhibited any type of hidden motive against Petitioner. Moreover, Petitioner does not allege, that the DHO was a "victim, witness, investigator, or otherwise significantly involved in the incident" such as to possibly render him an impartial decisionmaker. 28 C.F.R. § 541.8(b). Thus, the undersigned **FINDS** that Petitioner fails to state a claim that he was denied a neutral and detached hearing body in his disciplinary proceeding.

### 6. Sufficiency of Evidence

As discussed, the DHO's decision to revoke Petitioner's good time credits must be upheld so long as there was some evidence to support the DHO's decision. *Hill*, 472 U.S. at 454-56. Petitioner alleges that the evidence offered against him was insufficient to support the DHO's finding for the following reasons: Petitioner never actually received a tattoo; there were no photographs taken of the alleged tattoo; a needle was not in the alleged tattoo gun that was recovered from the cell; the photographs of the tattoo gun and a needle should not have been considered by the DHO because Petitioner was not charged with possessing them; there was no photographic or video evidence of the alleged tattoo stencil, instead the DHO relied only on Woolwine's statement that he saw what "appeared to be" a stencil on Petitioner's shoulder blade; and "they falsified" the incident and DHO reports. (ECF Nos. 1 at 9, 10; 10 at 4, 5). Petitioner seems to imply that the DHO was required to find proof "beyond a reasonable doubt" or another heightened evidentiary

burden. However, the DHO was not required to find indisputable evidence or any certain evidence to conclude that Petitioner attempted to receive a tattoo. *See, e.g., Smith v. Masters*, No. 1:15-CV-11533, 2017 WL 1064032, at *4 (S.D.W. Va. Feb. 16, 2017), *report and recommendation adopted sub nom. Smith v. Romero,* 2017 WL 1058988 (S.D.W. Va. Mar. 20, 2017) ("It was not incumbent upon the DHO to corroborate the employee's statements with video or audio evidence, as Petitioner suggests" because "[s]ome evidence does not in any way imply that prison disciplinary bodies must consider all possible evidence.") (markings and citations omitted).

Rather, all that was required was some minimal threshold of circumstantial evidence in the record that Petitioner committed the violation. *Hill*, 472 U.S. at 457. "The Federal Constitution does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board." *Id.* Instead, there simply must be "some" evidence to support the findings made in the disciplinary hearing such that the record is "not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary." *Id.*

Here, the DHO not only satisfied the "some evidence" standard established by the Supreme Court, but he applied the "greater weight of the evidence" heightened evidentiary standard adopted by the BOP. (ECF Nos. 1 at 20, 8 at 15). The DHO considered Woolwine's statement that he observed Petitioner sitting in a chair without a shirt and what appeared to be a stencil on his right shoulder blade area as Preston sat on the bed preparing a homemade tattoo gun and ink. (ECF No. 1 at 15). Petitioner takes issue with the fact that Woolwine did not definitively state that he observed a tattoo stencil and there was no direct evidence offered of the stencil in the hearing. Regardless, notwithstanding the stencil, the other facts alleged by Woolwine – that Petitioner was shirtless, and

Preston was next to him preparing the tattoo gun and ink – alone provided "some evidence" of the violation. In addition, the DHO viewed photographs of the alleged tattoo gun and needle. Petitioner provides no legal authority that the tattoo gun and needle should not have been considered because he was not charged with possessing them. In fact, it was directly relevant and supportive of the alleged charge.

The DHO could not have considered, nor was he required to consider, a photograph of the alleged tattoo because the charge was for attempt, and there is no indication that Petitioner was actually tattooed such that a photograph could have been obtained. Even if that documentation was factually possible, it is not for the Court to speculate what evidence the DHO should have considered so long as the DHO considered some evidence to support the charge. Furthermore, Petitioner fails to articulate why it was critical that the needle was not in the tattoo gun when it was recovered. As Woolwine stated, Preston was preparing the tattoo gun with ink when Woolwine arrived. It is reasonable to assume that the needle would be removed during that process. The fact that the needle was not in the tattoo gun fails to cast any doubt on the DHO's analysis. Finally, Petitioner does not identify any falsification or misrepresentations in the incident or DHO reports that demonstrate that he was denied due process. For all of the above reasons, the undersigned **FINDS** that there was very clearly sufficient evidence in the record that Petitioner committed the violation.

### 7.  Attempted Violation

Petitioner next argues that he never actually received a tattoo or engaged in self-mutilation, and the alleged offense of *attempted* tattooing/self-mutilation does not exist in the inmate handbook. (ECF No. 1 at 9, 10). BOP regulations clearly provide that "[a]iding, attempting, abetting, or making plans to commit any of the prohibited acts is

treated the same as committing the act itself." 28 C.F.R. § 541.3(a). "Tattooing or self-mutilation" is clearly listed as offense code 228, a fact which Petitioner does not dispute. 28 C.F.R. § 541.3. To any extent that Petitioner claims that he was not charged with a valid disciplinary offense, his argument fails. Further, mistake or ignorance of the law does not generally excuse a prisoner's conduct, and it certainly did not undermine the DHO's finding that Petitioner committed the prohibited act. *Latham v. Williams*, No. 5:15CV122, 2016 WL 8732326, at *4 (N.D.W. Va. May 20, 2016), *report and recommendation adopted,* 2016 WL 3580771 (N.D.W. Va. June 28, 2016), *aff'd,* 669 F. App'x 670 (4th Cir. 2016); *Gaston v. Taylor*, 946 F.2d 340, 342 (4th Cir. 1991) ("If the regulation is not constitutionally infirm, ignorance of it is not the basis of a valid due process challenge."). The undersigned **FINDS** that Petitioner fails to assert a violation of his due process rights on the grounds that he was charged with attempting to commit a prohibited act.

### 8. Right to Remain Silent

Petitioner contends that Bailey did not advise him of his right to remain silent on February 22, 2022. (ECF No. 1 at 10). Petitioner does not dispute that he was advised on February 23, 2022, well in advance of the disciplinary hearing, that he had the right to remain silent. (ECF No. 8-2 at 11). He confirmed at the hearing that he understood his due process rights. (ECF No. 1 at 18). Further, it is unclear why Petitioner raises this issue because he denied the charge, and the DHO did not rely on any of Petitioner's statements as incriminating evidence. The undersigned **FINDS** that Petitioner fails to assert a due process violation on the basis that the DHO did not advise Petitioner for at least a third time of his right to remain silent.

### 9. Disclosure of Evidence

In his reply, Petitioner argues that the BOP denied him due process by not presenting evidence to him. (ECF No. 10 at 3). It appears this argument is based on Respondent's contention that the Supreme Court established in *Wolff* that an inmate has a right to disclosure of evidence against him in disciplinary proceedings. (ECF No. 8 at 9). To the contrary, the portion of *Wolff* that mentioned disclosure of evidence concerned the rules applicable to parole hearings, and the Supreme Court explicitly held that the full panoply of rights afforded to a prisoner before revoking parole did not apply in the prison disciplinary context. *Wolff v. McDonnell*, 418 U.S. 559-60.

"While an inmate has a qualified right 'to call witnesses and present documentary evidence in his defense, the Supreme Court has never recognized a broader right to receive all discovery materials prior to a prison disciplinary hearing." *Allee v. Streeval*, No. 7:21-CV-00594, 2022 WL 3969945, at *6 (W.D. Va. Aug. 30, 2022) (citations and markings omitted). In fact, the Fourth Circuit previously rejected an argument that the rights established in *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny apply to prisoners in disciplinary settings, explaining that "*Brady*'s broad disclosure requirements simply cannot be reconciled with the needs and exigencies of the institutional environment." *Wise v. Carpenter*, 838 F.2d 469 (4th Cir. 1988). The Fourth Circuit revisited this question after its decision in *Wise*, but the Court failed to explicitly affirm or reject its holding, instead stating "we decline to decide whether *Brady* extends to prison disciplinary hearings." *Lennear*, 937 F.3d at 268 n.9. District courts in this circuit have generally continued to adhere to the Fourth Circuit's decision in *Wise*. *Taylor v. Young*, No. 5:18-CV-01071, 2020 WL 2500358, at *5 (S.D.W. Va. Feb. 7, 2020), *report and recommendation adopted,* 2020 WL 2497296 (S.D.W. Va. May 14, 2020) (collecting

cases).

Moreover, Petitioner does not assert any exculpatory, favorable, or any other evidence whatsoever that was withheld from him. The incident report very clearly laid out the relevant evidence, and the DHO relied on that same evidence in the disciplinary hearing. The undersigned **FINDS** that any argument that the BOP failed to present evidence to Petitioner before the disciplinary hearing is without merit.

## IV.    <u>Proposal and Recommendations</u>

For the aforementioned reasons, the undersigned respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the presiding District Judge **GRANT** Respondent's request for dismissal, (ECF No. 8); **DISMISS** the Petition for a Writ of Habeas Corpus, (ECF No. 1); and **REMOVE** this matter from the docket of the Court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Frank W. Volk, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown. Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v.*

*Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing party, Judge Volk, and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to the Petitioner and to counsel of record.

**FILED:** February 14, 2023

Cheryl A. Eifert
United States Magistrate Judge

23